IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION ) <br> OF KANSAS AND ) <br> WESTERN MISSOURI, ) <br>                                  ) <br>             Plaintiff, ) <br>                                  ) Case No. 11-2462-WEB-KGG <br> vs.                              ) <br>                                  ) <br> SANDY PRAEGER, Kansas Insurance ) <br> Commissioner, in her official capacity, ) <br>                                  ) <br>             Defendant. ) <br>                                  ) | |

**REPORT & RECOMMENDATION ON
<u>PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION</u>**

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction (Doc. 3).  The motion and its attendant evidentiary hearing were referred to the Magistrate Judge for the preparation of a Report & Recommendation concerning the disposition of the motion in accordance with 28 U.S.C. § 636(b)(1)(B).  The Magistrate Judge has reviewed and considered briefing by both parties, and has considered evidence (consisting of two sworn declarations submitted by Plaintiff and a short joint stipulation of the parties) and argument from the parties at an evidentiary hearing held on September 16, 2011.  Because the Plaintiff has presented insufficient evidence that its members will

likely suffer irreparable harm during the pendency of this action, the Magistrate Judge **recommends** that the Motion for Preliminary Injunction be **DENIED.**

## BACKGROUND

Plaintiff American Civil Liberties Union of Kansas and Western Missouri (Plaintiff or ACLU) is an affiliate of the national American Civil Liberties Union with more than 3,300 members in Kansas and Western Missouri. (Doc. 15, at ¶1, 2.) Plaintiff brought this action against Sandy Praeger in her official capacity as the Kansas Insurance Commissioner to challenge the constitutionality of a new Kansas Law, House Bill 2075 ("the Act").[1] As Insurance Commissioner, Ms. Praeger is responsible for the enforcement of the Act. (Doc. 15, at ¶ 3.)

The challenged provision at issue here applies to individual and group health insurance policies, and like programs. The portion of the Act at issue reads as follows:

> New Sec. 8. (a) Any individual or group health insurance policy, medical service plan, contract, hospital service corporation contract, hospital and medical service corporation contract, fraternal benefit society or health maintenance organization, municipal group-funded pool and the state employee health care benefits plan which is delivered, issued for delivery, amended or renewed on or

---

[1] Although Plaintiff also challenges Section 8(b) of the Act, which limits abortion coverage in policies participating in the health care exchange, the parties have stipulated that Plaintiff is not seeking to preliminarily enjoin that provision. (Doc. 15, at ¶ 11.)

> after July 1, 2011, shall exclude coverage for elective
> abortions, unless the procedure is necessary to preserve
> the life of the mother. Coverage for abortions may be
> obtained through an optional rider for which an
> additional premium is paid. The premium for the optional
> rider shall be calculated so that it fully covers the
> estimated cost of covering elective abortions per enrollee
> as determined on an average actuarial basis.

HB 2075. The Act defines "elective abortion" as "an abortion for any reason other than to prevent the death of the mother upon whom the abortion is performed; provided, that an abortion may not be deemed one to prevent the death of the mother based on a claim or diagnosis that she will engage in conduct which will result in her death." *Id*. HB 2075 was signed into law by Governor Brownback on May 25, 2011, and became effective on July 1, 2011.

The parties stipulate that women seek abortions for reasons beyond those that are necessary to save the life of the mother. (Doc. 15, at ¶ 4.) For example, in some instances, a woman who is in the process of miscarrying needs medical treatment to complete the termination of the pregnancy. (Doc. 15, at ¶ 5.) The decision to have an abortion may arise from many circumstances, including the termination of an unwanted pregnancy or a decision after complications from an intended pregnancy result in medical complications and health risks to the mother or fetus. (*See generally*, Doc. 4-1, Declaration of David L. Eisenberg, M.D.)

Prior to the Act going into effect, some insurance companies in Kansas

offered insurance policies that covered elective abortions in their comprehensive plans without a separate rider or premium. (Doc. 15, at ¶ 6.) As a result of the Act, women who formerly had insurance coverage for abortion will have to pay more for abortion care. (Doc. 15, at ¶ 7.) The cost for abortions in clinics in Kansas is between approximately $470 early in pregnancy to approximately $1,500 later on – and that the cost tends to increase as the pregnancy advances. (Doc. 15, at ¶¶ 8-9.) Hospital-based abortions are generally more costly than those performed in clinics and can cost thousands of dollars. (Doc. 15, at ¶ 10.)

Plaintiff claims that the Act violates the Due Process Clause, including the right to privacy and liberty in the fourteenth amendment, while also violating the Equal Protection guarantees inherent in the Due Process guarantees of the Fourteenth Amendment. Plaintiff requests a declaration that the Act is unconstitutional, and requests preliminary and permanent injunctive relief prohibiting Defendant (and the State of Kansas) from enforcing the Act.

In its Motion for Preliminary Injunction, Plaintiff requests an Order prohibiting the State from enforcing the Act during the pendency of this action. (Docs. 3, 4; *see also* Doc. 15, at ¶ 12.) Plaintiff claims that its members have lost or will lose insurance coverage because of the application of the Act, including a member who will lose coverage upon the renewal of her policy on October 1,

2011. Defendant denies that the Act is unconstitutional, and claims that the Act was passed for a valid purpose.

## DISCUSSION

### A. Standard for Preliminary Injunction.

The limited purpose of a Fed.R.Civ.P. 65 preliminary injunction is "merely to preserve the relative positions of the parties until a trial on the merits can be held." ***University. of Tex. v. Camenisch***, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981). Because "a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." ***Schrier v. University of Colo.***, 427 F.3d 1253, 1258 (10th Cir. 2005). A party requesting a preliminary injunction must establish that: "(1) [he or she] will suffer irreparable injury unless the injunction issues; (2) the threatened injury . . . outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood [of success] on the merits." ***Heideman v. S. Salt Lake City***, 348 F.3d 1182, 1188 (10th Cir.2003)).

### B. Irreparable Injury.

In the analysis of these factors, courts consistently hold that "[b]ecause a showing of **probable irreparable harm is the single most important**

**prerequisite** for the issuance of a preliminary injunction, **the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered**." *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir.1990) (emphasis added); *see also **Dominion Video Satellite, Inc. v. Echostar Satellite Corp***., 356 F.3d 1256, 1260 (10th Cir. 2004).

Based on the evidence presented – and arguments advanced – by the parties, the essential, preliminary question in the Court's analysis is whether Plaintiff has met the irreparable harm standard.

> 'To constitute irreparable harm, an injury must be certain, great, actual 'and not theoretical.'' Irreparable harm is more than 'merely serious or substantial' harm. **This requirement is met by a plaintiff demonstrating that there is a significant risk of harm that cannot be cured by monetary damages**. The party seeking the preliminary injunction bears the burden to show that 'the injury complained of is of such imminence that there is a clear and present need for equitable relief.' **Irreparable harm is the most important factor in obtaining a preliminary injunction**. . . . [W]holly conclusory statements alone will not constitute irreparable harm.

*Id*. (internal citations omitted) (emphasis added).

Plaintiff must establish that <u>its members</u> will suffer an irreparable harm, not that harm will result to the general citizenry. Plaintiff argues that a violation of its members' constitutional rights, even temporarily, amounts to irreparable injury. (Doc. 4, at 16 (*citing **Elrod v. Burns***, 427 U.S. 347, 373 (1976) and ***Pacific***

*Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1235 (10th Cir. 2005)). At argument, Defendant did not dispute this general proposition. Plaintiff's claim for that injury in its brief is, in its entirety: "Plaintiff's members' constitutional rights will be lost absent an injunction. For example, some members have already lost coverage, and another member is set to lose coverage October 1, 2011. Accordingly, all members who are losing coverage will be irreparably harmed." (*See* Doc. 4 at 16 (internal citation omitted).)[2]

In support of this claim, Plaintiff presents a sworn declaration from its Program Director. The portions of that declaration offered to support the claim of irreparable harm are:

3. The ACLU has members who will lose, and members who have already lost, their insurance coverage for abortion because of the Act. Some members are unable to purchase a rider to their policy to cover abortions because some insurance companies have not made such riders available.

4. Some members have already lost their insurance coverage for abortion. Others will lose coverage once their policies are renewed. For example, one member will lose coverage October 1, 2011, when her policy is renewed.

5. Some ACLU members who have lost or will lose abortion coverage because of the Act would consider abortion for any one of a number of reasons were they to become pregnant, including that they are not

---

[2] The Court could not, even with a preliminary injunction, prevent the claimed harm to members who have already lost coverage.

>   ready to parent, that may become pregnant as a result of rape, or may experience complications related to their pregnancies.
>
> 6.  For some ACLU members who will lose insurance coverage for abortion because of the Act, paying for an abortion would impose financial difficulties.

(Doc. 4-2). The declaration contains no foundation information of any kind. The Court is unable to ascertain how the Program Director arrived that the general conclusions made or collected the information.

Plaintiff has the burden of establishing irreparable injury in support of its Motion for Preliminary Injunction. ***Paramount Pictures Corporation v. Video Broadcasting Systems. Inc***., 724 F.Supp. 808 (D. Kan. 1989). A hearing on such a motion uses procedures that are "less formal and use evidence that is less complete than a trial on the merits." 451 U.S. at 395. A court may consider sworn statements. However, a court should be "wary of issuing an injunction based solely upon allegations and conclusory affidavits." ***Atari Games Corp. v. Nintendo of America, Inc***., 897 F.2d 1572, 1575 (Fed.Cir. 1990). In some jurisdictions, it is considered inadvisable to issue an injunction based on affidavits alone. *See* ***People ex rel Hartigan v. Peters***, 871 F.2d 1336 (7th Cir. 1989).

As stated at the hearing, the Court has serious concerns regarding the very general statements in the sworn declaration of Holly Weatherford, the Program Director for the ACLU. (Doc. 4-2.) Even more concerning, however, is the

absence of any foundation for Ms. Weatherford to make these statements.

"Establishing foundation is the process whereby a proponent of a piece of evidence identifies or authenticates the evidence, usually with the testimony of a witness." ***Sheets v. Salt Lake County***, 45 F.3d 1383, 1390 (10th Cir. 1995) (citing Edward W. Cleary, McCormick on Evidence § 51, at 123 (3d ed. 1984)).  The only foundation information in Ms. Weatherford's declaration is contained in paragraph 2, stating that she is the Program Director for Plaintiff.  There is no discussion of what that position entails or the information to which the position makes her privy.  Further, there is no discussion of the relationships, knowledge, and/or interaction – or level thereof – she has with Plaintiff's members.  As a result, the Court has no information that would allow it to determine whether or not she is qualified to authenticate the facts she is propounding.

This concern is not mere form over substance.  While the Plaintiff's challenge is to the Act's <u>purpose</u>, the irreparable harm inquiry must focus on the <u>likely effect</u> of the Act on the Plaintiff's members.  If the Act's purpose[3] is to create an undue burden on plaintiff's members' right to choose to terminate pre-viable pregnancies, the Act is unconstitutional.  ***Planned Parenthood of***

---

[3] Plaintiff's claim is that the Act was passed with an unconstitutional purpose.  For this motion, Plaintiff has not claimed that the Act has the unconstitutional effect of creating an undue burden to a woman's choice.  (Doc. 4, n.1).

*Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992).  "Abortion is customarily chosen as an unplanned response to the consequence of unplanned activity or to the failure of conventional birth control."  *Id*., at 856.  Thus, like other unplanned medical conditions, a women's access to care may be burdened by the lack of insurance.  An explanation of how the Act, which requires the issuance of separate riders for abortion coverage, will likely result in the loss of insurance to Plaintiff's members who may require the procedure – with foundation for those claims – is lacking.  Because the Act may leave women in the position of paying for their own care, the cost of the care relative to the financial ability of the woman is relevant – perhaps critical – to the irreparable harm inquiry.  However, the general statement in the declaration that the Act will impose "financial difficulties" on some members is not a conclusion to which the Court can subscribe without further support.

Certainly, the Court may take into account the circumstances surrounding the application for preliminary injunction and the hearing.  While this hearing was expedited at Plaintiff's request, it was not conducted as an emergency.  Plaintiff filed this action after the Act was in already in effect to prevent its further application.  The hearing date of September 16 was set to accommodate Plaintiff's concerns about its unidentified member who will allegedly lose her insurance

coverage on October 1. The evidentiary hearing was set on August 26 (Doc. 10), three weeks before the hearing. Plaintiff's Motion was filed a month prior to the hearing. Plaintiff has not claimed an inability to provide evidentiary support for the general conclusions in the declaration.[4] Because Plaintiff has failed to present evidence sufficient to establish its "clear and unequivocal right to relief," the motion must fail.

**IT IS THEREFORE RECOMMENDED** that the District Court **DENY** Plaintiff's Motion for Preliminary Injunction. (Doc. 4.) Pursuant to 28 U.S.C. §636(b)(1), Fed.R.Civ.P. 72, D.Kan. Rule 72.1.4, and the previous order of this Court (*see* Doc. 10), Plaintiff shall have until September 26, 2011, to serve and file with the U.S. District Judge assigned to the case, its written objections to the findings of fact, conclusions of law, or recommendations of the undersigned Magistrate Judge. Plaintiff's failure to file such written, specific objections within the fourteen-day period will bar appellate review of the proposed findings of fact, conclusions of law, and the recommended disposition.

**IT IS THEREFORE ORDERED AND RECOMMENDED**.

---

[4] When the Court expressed its concern about the quality of the evidence at the hearing, Plaintiff asked to file a supplemental affidavit. In fairness to Defendant, which had prepared its response and presentation in reliance on the evidence presented and facts to which the parties had stipulated, the Court denied the request.

Dated at Wichita, Kansas, on this 19th day of September, 2011.

              S/ KENNETH G. GALE
              KENNETH G. GALE
              United States Magistrate Judge