IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AMERICAN CIVIL LIBERTIES UNION       )
OF KANSAS AND WESTERN MISSOURI,      )
                                     )
                    Plaintiff,       )
                                     )
v.                                   )          No.  11-2462-WEB-KGG
                                     )
SANDY PRAEGER,  Kansas Insurance     )
Commissioner, in her official capacity, )
                                     )
                    Defendant.       )
_____)

**Memorandum and Order**

Plaintiff American Civil Liberties Union of Kansas and Western Missouri ("ACLU")

filed this action under 42 U.S.C. § 1983 seeking declaratory and injunctive relief to halt

enforcement of a Kansas statute which took effect on July 1, 2011.  A portion of the statute

essentially prohibits insurance companies in Kansas from providing coverage for "elective"[1]

abortion services under comprehensive health insurance policies.[2]    2011 Ks. H.B. 2075, §8(a),

amending K.S.A. § 40-2124.  The law provides that coverage for such services may be obtained

through purchase of a separate optional rider, the premium for which must be calculated so as to

fully cover the estimated cost of covering elective abortions per enrollee on an actuarial basis. *Id*.

---

[1] The statute allows a comprehensive policy to cover any procedure that is "necessary to
preserve the life of the mother."  It prohibits coverage for "elective" abortions, which the statute
defines to mean "an abortion for any reason other than to prevent the death of the mother...."
2011 Ks. H.B. 2075, § 8(c)(2).

[2] The law applies to any health insurance policy issued, amended or renewed after July 1,
2011.

The complaint alleges that this provision and other portions of the statute violate the rights of plaintiff's members under the Due Process and Equal Protection provisions of the Fourteenth Amendment.

Along with the complaint plaintiff filed a motion for preliminary injunction.  Doc. 3.  The motion seeks to enjoin enforcement of the above-described provision of the statute.  Pursuant to 28 U.S.C. § 636(b)(1)(B), the court previously referred the motion to U.S. Magistrate Judge Kenneth G. Gale for a Report and Recommendation.  Judge Gale held a hearing on September 16, 2011, and issued a Report and Recommendation on September 19, 2011.  The Report found that the affidavits submitted by plaintiff in support of the motion were lacking in foundation and were inadequate to show irreparable injury.  The Report recommended that the court deny the motion for preliminary injunction on that basis.  Plaintiff has filed a timely objection to the Report and Recommendation.

I.  *Standard of Review*.

On a matter referred to a magistrate under 28 U.S.C. § 636(b)(1)(B), the court makes a *de novo* determination of all matters objected to.  *See* § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").  *De novo* review requires the district court to consider relevant evidence of record and not merely review the magistrate's recommendation.  *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 584 (10th Cir. 1995).  The district court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  It may also receive further evidence or recommit the matter to the magistrate judge with instructions. § 636(b)(1).

II. _Standards for a Preliminary Injunction_.

A preliminary injunction is an order, entered before a final determination of the merits, that commands a party to do or refrain from a specified act.  The basic purpose of a preliminary injunction is to preserve the relative positions of the parties until a trial on the merits can be held. _University of Texas v. Camenish_, 451 U.S. 390, 395 (1981).  To obtain a preliminary injunction, the movant must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.  _Greater Yellowstone Coal. v. Flowers_, 321 F.3d 1250, 1255 (10th Cir. 2003).

"A preliminary injunction is an extraordinary remedy; it is the exception rather than the rule." _GTE Corp. v. Williams_, 731 F.2d 676, 678 (10th Cir.1984).  It "constitutes drastic relief to be provided with caution ... [and] should be granted only in cases where the necessity for it is clearly established." _United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc_., 883 F.2d 886, 888-89 (10th Cir. 1989).  The right to relief on a preliminary injunction "must be clear and unequivocal." _Greater Yellowstone Coal_, 321 F.3d at 1256.

Injunctions that disrupt the status quo are particularly disfavored and "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." _Beltronics, USA, Inc. v. Midwest Inventory Distribution, LLC_, 562 F.3d 1067, 1070 (10th Cir. 2009) (_quoting Schrier v. Univ. of Colo._, 427 F.3d 1253, 1259 (10th Cir.2005)).  When a preliminary injunction would alter the status quo, the

movant bears a heightened burden and "must make a strong showing both with regard to the

likelihood of success on the merits and with regard to the balance of harms." *O Centro Espirita*

*Beneficente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 976 (10th Cir. 2004) (en banc), *aff'd*,

546 U.S. 418 (2006).  The *status quo* refers to the last peaceable uncontested status existing

between the parties before the dispute developed.  *Nova Health Systems v. Edmondson*, 460 F.3d

1295, 1298, n.5 (10th Cir. 2006).

  Defendant contends the injunction sought by plaintiff would disrupt the *status quo*,

because the statute now being challenged has been in effect since July 1, 2011, and plaintiff

seeks to alter the legal landscape by enjoining further enforcement of the law. Doc. 14 at 5.

Although this argument has facial appeal, the court concludes that the last uncontested status

between the parties before the dispute arose would be that which existed prior to the challenged

statute taking effect.  *Cf. Schrier v. University Of Colo.*, 427 F.3d 1253 (10th Cir. 2005) (last

peaceable uncontested status between the parties was prior to plaintiff's ouster as chair of his

university department).  As noted by the concurrence in *Centro Espirita*, "[w]hen a statute is

newly enacted, and its enforcement will restrict rights citizens previously had exercised and

enjoyed, it is not uncommon for district courts to enjoin enforcement pending a determination of

the merits of the constitutional issue."  *O Centro Espirita Beneficente Uniao Do Vegetal v.*

*Ashcroft*, 389 F.3d 973, 977 (10th Cir. 2004) (en banc) (McConnell, J., concurring), *cert.*

*granted sub nom on other grounds*, *Gonzales v. O Centro Espirita Beneficente Uniao Do*

*Vegetal*, 544 U.S. 973, 125 S.Ct. 1846, 161 L.Ed.2d 723 (2005).  On the other hand, "[w]hen a

statute has long been on the books and enforced, ... it is exceedingly unusual for a litigant who

challenges its constitutionality to obtain (or even to seek) a preliminary injunction against its

continued enforcement." *Id*.  As suggested by Judge McConnell, this is consistent with the general rule on *status quo*: "[I]t is sometimes necessary to require a party who has recently disturbed the *status quo* to reverse its actions.  Such an injunction restores, rather than disturbs, the *status quo ante*, and is thus not an exception to the rule." *Id*.  This is particularly apt under the current circumstances, because the Kansas law has a "rolling effect" that may impact particular health insurance policies not immediately, but later when the policy is renewed, and in fact plaintiff's allegation is that one of its members will lose abortion coverage under a comprehensive policy as of October 1, 2011.  Under the circumstances, the court concludes that the heightened standard for injunctions that alter the *status quo* does not apply to plaintiff's request for preliminary injunction.

      III.   *Summary of Objections*.

      Magistrate Judge Gale's Report addressed irreparable harm, which is an essential element for obtaining a preliminary injunction.  He examined the sworn declaration of plaintiff's Program Director, Ms. Weatherford, which stated in part that some ACLU members have lost their insurance coverage for abortion and some will lose such coverage in the future, including a member who will lose her current coverage on October 1, 2011, and that for some members "paying for an abortion would impose financial difficulties."  Judge Gale said he was unable to ascertain how the Program Director collected the information presented or how she arrived at the general conclusions set forth, because there was an absence of foundation for her statements.  He further said "[a]n explanation of how the Act, which requires the issuance of separate riders for abortion coverage, will likely result in the loss of insurance to Plaintiff's members who may require the procedure – with foundation for those claims – is lacking."  He found the cost of

abortion care relative to the financial ability of the woman "is relevant – perhaps critical – to the irreparable harm inquiry," but the Program Director's general statement that the Act will impose "financial difficulties" on some members was too vague and unsupported for the court to conclude there was irreparable harm.  Judge Gale also denied plaintiff's request to supplement or add to the submitted declarations, noting that the motion was filed a month before the hearing and plaintiff had not claimed an inability to provide evidentiary support for its motion in a timely fashion.  In sum, he found, "[b]ecause Plaintiff has failed to present evidence sufficient to establish its 'clear and unequivocal right to relief,' the motion must fail."  Doc. 17 at 11.

Plaintiff contends the Magistrate's conclusion is inconsistent with the well-established principle that violation of an individual's constitutional rights, even temporarily, constitutes irreparable harm as a matter of law.  Plaintiff contends the ban on comprehensive coverage for abortion services violates its members' rights and thus causes irreparable harm as a matter of law.  Doc. 18 at 5 (*citing, inter alia, Ezell v. City of Chicago,* ___F.3d___, 2011 WL 2623511 (7th Cir., Jul. 6, 2011) (district court mistakenly assumed violation of constitutional rights was not irreparable harm)).  As such, plaintiff argues, the Magistrate's comment that the cost of care was critical to a showing of irreparable harm  is contrary to settled law.

Plaintiff also objects to the Magistrate's finding of a lack of foundation for Ms. Weatherford's declaration.  It argues the declaration was based on her personal knowledge and was otherwise simply a combination of common sense and the undisputed facts reflected in the parties' factual stipulation.  Moreover, plaintiff argues it should be allowed to cure any evidentiary defect, and asks that it be allowed to submit an additional declaration from one of its members.  It argues the court should reject the Magistrate's recommendation, that it should be

6

allowed to cure the evidentiary defect, and that the court should grant the motion for preliminary

injunction.  Alternatively, plaintiff asks the court to set an expedited schedule for discovery and

summary judgment so that a ruling on the constitutionality of the law may be realized as quickly

as possible.

IV.  *Discussion*.

Plaintiff correctly points out that when an alleged constitutional right is involved, most

courts, including the Tenth Circuit, hold that no further showing of irreparable injury is

necessary.  *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001).  Based on that doctrine,

plaintiff argues the Magistrate's finding of no showing of irreparable harm is based on an error

law.

Even assuming the Magistrate's conclusion on irreparable harm was error,[3] the court

concludes the motion for preliminary injunction should be denied for other reasons.  Plaintiff

claims for purposes of the instant motion that the Kansas law is invalid – not because it has the

*effect* of placing a substantial obstacle in the path of a woman seeking an abortion — but because

the legislature's *purpose* was to create such an obstacle.  Doc. 4 at 7-8, n.1.  Although plaintiff's

---

[3] The absence of any specific circumstances or facts surrounding the claims of plaintiff's
members makes it difficult to say there is a clear showing of imminent injury -- one with a clear
and present need for equitable relief.  The schedule for this motion was largely driven by
plaintiff's allegation that one of its members would lose insurance coverage on October 1, 2011.
But plaintiff has presented no specific facts concerning that member or her insurance coverage.
For example, it is unknown whether it would be a financial difficulty for this member to pay for
an abortion if the need arose, whether an insurance rider is available to her from her insurance
company or from some other company, and the cost of any such alternative coverage.  Moreover,
nothing in the record discloses whether, if the court were to issue the requested injunction, this
member's insurance company would continue to provide abortion coverage as part of the
comprehensive health policy currently issued to her.  The same is true with respect to plaintiff's
other members.

complaint does challenge the effect of the law, the instant motion is based solely on the Act's asserted unlawful purpose, not its effect.  Perhaps for that reason, plaintiff has not provided much in the way of an evidentiary record in support of the motion.  After reviewing all of the materials of record, and having listened to the arguments of counsel before the Magistrate,[4] the court concludes plaintiff has failed to show that it is likely to prevail on the merits of this "invalid purpose" claim.

A.  Legal Framework.

A brief review of the framework of abortion law is necessary to address the claim.  It is a constitutional liberty of a woman in this country to have some freedom to terminate her pregnancy.  *Planned Parenthood of Southeastern Penn. v. Casey*, 505 U.S. 833, 869 (1992).  In short, prior to the viability of her fetus, a woman has a right to choose to terminate her pregnancy.  *Id*. at 870.  States, meanwhile, have a legitimate and important interest in protecting the potentiality of human life – an interest recognized in *Roe v. Wade* that "has been given too little acknowledgment and implementation by the [Supreme] Court in its subsequent cases."  *Id*. at 871.  At any stage of pregnancy, a State may further that interest by enacting rules and regulations to ensure that the choice to terminate a pregnancy is thoughtful and informed.  *Id*. But prior to viability of the fetus, a State regulation is invalid *if it has the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion. Id*. at 877.  "A statute with this purpose is invalid because the means chosen by the State to further the interest in potential life must be calculated to inform the woman's free choice, not hinder it.  And a statute

---

[4] The court listened to a recording of the arguments that was made available through the court's computer system.

which, while furthering the interest in potential life or some other valid state interest, has the effect of placing a substantial obstacle in the path of a woman's choice cannot be considered a permissible means of serving its legitimate ends." *Id*. Subsequent to viability, on the other hand, the State in promoting its interest in the potentiality of human life may, if it chooses, regulate and even proscribe abortion, except where it is necessary, in appropriate medical judgment, for the preservation of the life or health of the mother. *Id*. at 879.

*Casey* observed that numerous forms of state regulation might have the incidental effect of increasing the cost or decreasing the availability of medical care, whether for abortion or any other medical procedure. *Id*. at 874. "The fact that a law which serves a valid purpose, one not designed to strike at the right itself, has the incidental effect of making it more difficult or more expensive to procure an abortion cannot be enough to invalidate it. Only where state regulation imposes an undue burden on a woman's ability to make this decision does the power of the State reach into the heart of the liberty protected by the Due Process Clause." *Id*. Thus, "[r]egulations which do no more than create a structural mechanism by which the State, ... may express profound respect for the life of the unborn are permitted, if they are not a substantial obstacle to the woman's exercise of the right to choose." *Id*. at 877.

One other line of authority – the public funding cases – sheds some further light on the nature of the abortion right. In *Maher v. Roe*, 432 U.S. 464 (1977), the Court clarified that the right recognized in *Roe* was not an unqualified constitutional right to an abortion, but a right that protects a woman from unduly burdensome interference by the State with her freedom to decide whether to terminate her pregnancy. That right "implies no limitation on the authority of a State to make a value judgment favoring childbirth over abortion, and to implement that judgment by

9

the allocation of public funds." *Id*. at 474.  Thus, *Maher* found it permissible for the state and

federal governments to subsidize the medical expenses of childbirth for indigent women under

the Medicaid program, but to prohibit the use of such funds for abortion services.  Such a

regulation, the Court said:

> [p]laces no obstacles – absolute or otherwise – in the pregnant
> woman's path to an abortion.  An indigent woman who desires an
> abortion suffers no disadvantage as a consequence of [the State's]
> decision to fund childbirth; she continues as before to be
> dependent on private sources for the services she desires.  The
> State may have made childbirth a more attractive alternative,
> thereby influencing the woman's decision, but it has imposed no
> restriction on access to abortions that was not already there.  The
> indigency that may make it difficult – and in some cases, perhaps,
> impossible – for some women to have abortions is neither created
> nor in any way affected by [the State] regulation.

*Id*. at 474.  The regulation thus did not impinge on the right recognized in *Roe v. Wade*.

As noted above, *Casey* said a law in this context is invalid if it has the *purpose or effect*

of creating a substantial obstacle to abortion.  Plaintiff only challenges the purpose of the law in

this motion, arguing the following shows a legislative purpose to create a substantial obstacle.

The bill itself was passed in a legislative session that included passage of several other bills

regulating abortion.  One of those bills was enjoined by a judge of this court based on a

preliminary finding that it was passed for the improper discriminatory purpose of preventing

Planned Parenthood from receiving federal family planning money because of that group's

association with abortion care.  *See Planned Parenthood v. Brownback*, 2011 WL 3250720, *15

(D. Kan., Aug. 1, 2011).  The court notes that in the *Planned Parenthood* case, the evidence of

the act's improper purpose included:  a statement by the sponsor of the legislation, on the House

floor that the purpose of the bill was in fact simply to take away funds from Planned Parenthood;

a showing that the act directly contradicted federal law governing use of the funds;  and the state's asserted explanation for the law did not withstand simple scrutiny, leading the court to conclude that it was a "*post-hoc*, 'litigation-spawned' attempt to find some alternative, benign rationale." *Id*. at *9-11.   A second bill passed in the same session was likewise enjoined by a judge of this court, based upon a finding that licensing requirements imposed upon abortion clinics were likely unconstitutional. *Hodes & Nauser, Mds, P.A. v. Moser*, No. 11-2365-CM (D. Kan. 2011).  A third law imposed a ban on certain abortions after 20 or 22 weeks, which plaintiff argues is contrary to the standard in *Casey*.  H.B. 2218, 84th Leg. (Kan. 2011).   In addition to the passage of these other acts, plaintiff argues that the Act's restrictions on insurance coverage cannot be justified by the state's interest in potential life, because the Supreme Court has said such an interest may only be furthered by informing the woman's free choice, not hindering it. Likewise, it argues, the state's interest in protecting maternal health is actually undermined rather than furthered by this law, because the law takes away insurance coverage for abortions that are necessary to protect a woman's health.  Plaintiff argues that the Act does not serve any valid governmental purpose, but simply puts obstacles in the path of women seeking abortions, making it unconstitutional.  Doc. 4 at 11.  "In sum, it is clear from the Act's text and legislative context, and from the fact that the Act does not serve a valid governmental interest, that the Act serves no purpose but to make abortions more difficult [to obtain]. *Id*.  Plaintiff argues that the law fails even under a "rational basis" standard of review, because it does not further any legitimate governmental interest.  *Id*. at 12.  Moreover, plaintiff argues that the law violates the right to equal protection, because it allows men to buy comprehensive policies covering all of their health needs, but prohibits women from doing the same.  *Id*. at 13.

11

B.  Legislative Purpose.

In *Jane L. v. Bangerter*, 102 F.3d 1112 (10th Cir. 1996), the Tenth Circuit (with this judge on the panel) struck down a Utah law based in part on what the court found was "the Utah legislature's intent ... to provide a vehicle by which to challenge *Roe v. Wade*, as demonstrated by the legislature's establishment of an abortion litigation trust account," as well as by enactment of a law that directly contradicted Supreme Court precedent.  *Id.* at 1116.  The State conceded in that case that the Act was intended to prevent nontherapeutic abortions of nonviable fetuses after 20 weeks, contrary to *Casey's* holding that a woman has a right to terminate her pregnancy prior to viability.  *Id.* at 1117.  The court further found the law was invalid because it had an impermissible effect – namely, it not only created a substantial obstacle to obtaining a pre-viability abortion but in fact provided an outright ban, clearly contravening *Casey*.  *Id.*

A legislative purpose to accomplish a constitutionally forbidden result may be found when that purpose was "'the predominant factor motivating the legislature's decision.' Such a forbidden purpose may be gleaned both from the structure of the legislation and from examination of the process that led to its enactment."  *Jane L.*, 102 F.3d at 1116 (*citing Armstrong v. Mazurek*, 94 F.3d 566, 567 (9th Cir. 1996) [additional citations omitted]).

The *Mazurek* case cited above eventually reached the Supreme Court.  In that case, the Montana legislature passed a law requiring that all abortions be performed by a physician.  Although a district court denied a preliminary injunction after finding a lack of evidence that the law had the effect of creating a substantial obstacle to women seeking abortions, a court of appeals reversed based on its finding that the purpose of the law may have been to create such an obstacle.  *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).  Some evidence suggested the

12

law was intended to restrict the activities of one particular physician's assistant who performed

abortions and who was targeted by anti-abortion activists.  *See Id*. at 979-80 (Stevens, J.

dissenting).  Also, two other provisions in the same Act were re-enactments of provisions

previously held unconstitutional.  *Id*.  Finally, the bill itself was drafted by an anti-abortion

group.  *Id*. at 973.  Despite this background, the Supreme Court vacated the court of appeals'

ruling, stating as follows:

> The Court of Appeals never contested this District Court
> conclusion that there was "insufficient evidence" in the record that
> the requirement posed a " 'substantial obstacle to a woman seeking
> an abortion.' " Instead, it held that the physician-only requirement
> was arguably invalid because its purpose, according to the Court of
> Appeals, may have been to create a substantial obstacle to women
> seeking abortions. 94 F.3d, at 567. But even assuming the
> correctness of the Court of Appeals' implicit premise-that a
> legislative purpose to interfere with the constitutionally protected
> right to abortion without the effect of interfering with that right
> (here it is uncontested that there was insufficient evidence of a
> "substantial obstacle" to abortion) could render the Montana law
> invalid-there is no basis for finding a vitiating legislative purpose
> here. We do not assume unconstitutional legislative intent even
> when statutes produce harmful results, see, e.g., Washington v.
> Davis, 426 U.S. 229, 246, 96 S.Ct. 2040, 2050-2051, 48 L.Ed.2d
> 597 (1976); much less do we assume it when the results are
> harmless. One searches the Court of Appeals' opinion in vain for
> any mention of any evidence suggesting an unlawful motive on the
> part of the Montana Legislature. If the motion at issue here were a
> defendant's motion for summary judgment, and if the plaintiff's
> only basis for proceeding with the suit were a claim of improper
> legislative purpose, one would demand some evidence of that
> improper purpose in order to avoid a nonsuit. And what is at issue
> here is not even a defendant's motion for summary judgment, but a
> plaintiff's motion for preliminary injunctive relief, as to which the
> requirement for substantial proof is much higher. "It frequently is
> observed that a preliminary injunction is an extraordinary and
> drastic remedy, one that should not be granted unless the movant,
> by a clear showing, carries the burden of persuasion."

*Id*. at 972 [citation omitted].  The Court noted that the physician-only requirement was itself

consistent with Supreme Court precedent.  *Id*. at 973.  It said the fact that an anti-abortion group

drafted the law "says nothing about the legislature's purpose in passing it."  *Id*.  *Mazurek* also

clarified that such a law is not invalid for an improper purpose unless the record supports a

conclusion that the legislature's "predominant motive" was to create a substantial obstacle to

abortion.  *Id*. at 974, n.2.

        Under the foregoing standard, plaintiff has failed to cite evidence to show that the Kansas

legislature's predominant motive in enacting this particular law was to create a substantial

obstacle to abortion.  Plaintiff argues the law has only a single purpose – to create such an

obstacle.  But defendant has cited various interests allegedly furthered by the law.  Among other

things, it contends the law furthers the state interest of lowering insurance costs, and that it is a

"freedom of conscience" provision that prevents Kansas citizens who object to abortion from

having their insurance premiums used to fund certain abortion services.  It asserts that what the

"law really does is eliminate[] the subsidy that other participants in health insurance plans have

been paying for the costs of abortions for those participants who actually choose to have an

abortion."  Doc. 14 at 25.  Defendant contends the nature of insurance policies and the pooling of

premiums and risk pools makes insurance comparable to the "public fund" cases, which say that

a State can promote childbirth and elect to not to fund abortion, or to laws concerning

conscientious objection to the use of mandatory union dues.  Doc. 14 at 15-18.  Although

defendant cites no authority upholding such a view, neither has this particular argument been

directly tested or foreclosed by the Supreme Court.[5]  In support of its argument, defendant also

---

        [5] Plaintiff accurately points out that the instant challenge involves insurance policies
funded entirely with private rather than public funds.  Several courts have addressed similar
laws. In *National Educ. Ass'n. Of Rhode Island v. Garrahy*, 779 F.2d 790 (1st Cir. 1986), the

points out that the new federal health care law – the Patient Protection and Affordable Health

Care Act – has a similar arrangement.  It establishes ground rules for qualified health plans to be

offered on State "exchanges," and specifically provides that "a State may elect to prohibit

abortion coverage in qualified health plans offered through an Exchange...."  42 U.S.C. §

18023(a).  The federal law has a mechanism for segregating costs and premiums for abortion

services related to such policies.  *See id*.  The federal law was accompanied by a Presidential

Executive Order, which states that the federal health care law "maintains current Hyde

Amendment restrictions governing abortion policy and extends those restrictions to the newly

created health insurance exchanges," since policies on such exchanges may be paid for in part by

tax credits or government subsidies. The Kansas law pertaining to calculation of a separate

premium for an abortion rider appears to draw heavily from the federal law.  The same law

challenged in the instant motion also has a provision prohibiting policies on Kansas health

insurance exchanges from providing coverage for elective abortions.  Of course, none of this

---

First Circuit agreed with a district court ruling that such a law violated the right recognized in
*Roe v. Wade*.  The district court, relying upon detailed evidence concerning the effect of the law
on the cost and availability of health insurance, and applying strict scrutiny analysis, found the
law would have a significant impact on many women's right to choose abortion. *See National
Educ. Ass'n. Of Rhode Island v. Garrahy*, 598 F.Supp. 1374, 1378 (D. R.I. 1984).  The judge
further found that the law's stated objective of discouraging abortion and encouraging childbirth
was impermissible.  *Id*. at 1385.  *See also American College of Obstetricians and Gynecologists
v. Thornburgh*, 737 F.2d 283 (3rd Cir. 1984) (insurance restriction adds a barrier to obtaining
abortion; state's asserted interest in lowering insurance costs impinges on a fundamental right
and cannot withstand strict scrutiny).   The Eighth Circuit found summary judgment should not
have been granted to a plaintiff who "introduced no evidence that insurance policies covering
elective abortions are unavailable or prohibitively expensive" as a result of the law, and where
the state claimed the law rationally furthered a legitimate governmental purpose of "reducing the
cost of insurance and in protecting the interests of citizens who object to subsidizing abortions
through payment of their insurance premiums."  *Coe v. Melahn*, 958 F.2d 223 (8th Cir. 1992).

insulates the law from *Casey's* rule that the state cannot create a substantial obstacle to a woman's right to obtain a pre-viability abortion.  But it does weigh against plaintiff's contention that the sole purpose of this Act was to impermissibly create a substantial obstacle to abortion.

Whether one agrees or disagrees with this asserted cost and/or "freedom of conscience" rationale, there is nothing in the record to show that this was not the legislature's purpose in adopting the law.  Moreover, the claimed interests are rational ones that do not necessarily manifest a legislative purpose to create a substantial obstacle to obtaining an abortion.  The Kansas law governs the issuance and structure of insurance policies, a matter on which the states traditionally have broad authority, and on its face the Act does nothing to directly prohibit or restrict a woman from obtaining an abortion.  Whether the practical *effect* of the law is to actually create a substantial obstacle is another question, but plaintiff has not attempted in this motion to put on evidence to establish such an effect, and the court expresses no opinion here on that question.  Insofar as the purpose of the law is concerned, the likely effect of it is not so self-evident that it must be said to manifest a legislative intent to obstruct the right to abortion.[6]

Where a law can be viewed as having a rational purpose other than simply obstructing the right to abortion, the court cannot presume that an invalid purpose actually motivated the legislature to adopt the law, let alone that the invalid purpose was the legislature's predominant

---

[6] The briefs disclose that four or five other states have similar restrictions on private insurance policies, with several of those laws having been in effect for over 25 years.  There is no evidence in the record concerning the effect of those laws on a woman's right to choose an abortion.

motive.[7]  *See Karlin v. Foust*, 188 F.3d 446, 493 (7th Cir. 1999) ("While a plaintiff can challenge an abortion regulation on the ground that the regulation was enacted with an impermissible purpose, the joint opinion in *Casey* and the Court's later decision in *Mazurek* ... suggest that such a challenge will rarely be successful, absent some sort of explicit indication from the state that it was acting in furtherance of an improper purpose.").  *Cf. Miller v. Johnson*, 515 U.S. 900, 916 (1995) ('[D]iscriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences.  It implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of,' ... its adverse effects") [citation omitted].  That is particularly true where the record before the court lacks any evidentiary showing that the law actually has the effect of creating a substantial obstacle to obtaining an abortion.  *Cf. Mazurek*. And like *Mazurek*, the mere fact that the legislature passed other provisions of dubious constitutional validity does not speak to the legislative purpose in adopting this provision.  The court concludes plaintiff has failed to show that it is likely to prevail on its claim that Section 8(a) of the Act was predominantly motivated by an unconstitutional legislative intent to create a substantial obstacle to a woman's right to choose abortion.

As for plaintiff's claim that the Kansas law also violates its members' right to equal protection of the laws, the court agrees with defendant that such a claim is likely subject to

---

[7] The court rejects plaintiff's suggestion that *any* State interest other than protecting the potentiality of human life or maternal health necessarily renders a state law concerning abortion invalid.  *Casey* observed that a statue which, "while furthering the interest in potential life *or some other valid state interest*, has the effect of placing a substantial obstacle in the path of a woman's choice" cannot be considered a permissible means of serving its legitimate ends. *Casey*, 505 U.S. at 877.  *Casey* does not limit the state interests that could underlie all state regulations touching on abortion; it makes clear that no matter what state interest is involved, it is impermissible for the state to further its interest by creating a substantial obstacle to previability abortions.

review under a rational basis test, and that plaintiff has failed to show a likelihood of prevailing

on that claim as well.  *Cf. Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993)

(opposition to abortion is not class or gender-based discrimination).  The law appears to

rationally further a state interest in allowing the State's citizens to avoid paying insurance

premiums for services to which they have a moral objection.  Lest there be any confusion from

this finding, the court reiterates that such state interests cannot justify the law if the actual effect

of it is to create a substantial obstacle to a woman's right to choose abortion.  But the plaintiff

has not made that claim in this motion, nor has it provided evidence to support such a finding,

and the requested injunction must therefore be denied.

     C.  <u>Request for Leave to File Additional Evidence</u>.

     Plaintiff argues it should be allowed to "cure" the evidentiary defect identified by the

Magistrate Judge by filing a declaration from its member who will lose insurance coverage on

October 1, 2011.  But as the Magistrate noted, the briefing and hearing schedule was set up to

accommodate the plaintiff, and plaintiff cites no reason why it could not have presented such

evidence in a timely fashion that would have allowed the defendant an opportunity to address it

at the hearing.  Moreover, Plaintiff's motion for preliminary injunction was based upon the

allegedly improper purpose of the legislature in passing the Act.  Doc. 4 at 5-7, & n.1

("[P]laintiff's claim focuses on the Act's unlawful *purpose*, not its effect, and thus *Coe* has no

bearing on Plaintiff's claims.").  Plaintiff has not explained how supplementing its evidence with

a declaration from one of its member would relate to that claim.  Accordingly, the court will

deny plaintiff's request to supplement its evidence.  The court notes, however, that the denial of

the instant motion is without prejudice.  Nothing in this court's ruling precludes plaintiff from

filing a subsequent motion for preliminary injunction if it can meet all of the prerequisites for such a motion, nor does it constitute a final ruling on the merits of plaintiff's claims.

  D. <u>Discovery & Scheduling</u>.

  Plaintiff requests that if the court denies the instant motion, it set an expedited schedule for discovery and summary judgment, so that the Act's constitutionality and its effect on the rights of plaintiff's members may be promptly determined.  That request is well-taken;  the court will direct the Magistrate to set an expedited schedule for discovery and dispositive motions.

  V. *Conclusion*.

  The court adopts the Recommendation of the Magistrate Judge, albeit for different reasons than relied upon by the Magistrate.  Accordingly, Plaintiff's Motion for Preliminary Injunction (Doc. 3) is DENIED.  Plaintiff's Objection to the Report and Recommendation is denied as moot.

  The court directs the Magistrate Judge to set an expedited schedule for discovery and the filing of dispositive motions.

  IT IS SO ORDERED this  29th  Day of September 29, 2011, at Wichita, Ks.


_____

Wesley E. Brown
U.S. Senior District Judge