UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION OF KANSAS AND WESTERN MISSOURI, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 11-CV-2462-WEB-KEG |
| Plaintiff, | | |
| v. | | **AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| SANDY PRAEGER, Kansas Insurance Commissioner, in her official capacity, | | |
| Defendant. | | |

Plaintiff American Civil Liberties Union of Kansas and Western Missouri ("ACLU") for its complaint in the above-captioned matter, alleges as follows:

**PRELMINARY STATEMENT**

1. As part of a wave of restrictions on access to abortion enacted in Kansas in 2011, the Kansas legislature enacted House Bill 2075 (the "Act"). The Act singles out one health care service – abortion – and prohibits insurance companies from offering comprehensive health insurance plans that include this service.

2. As a result of the Act, thousands of Kansas women, including some of Plaintiff's members, have lost or will soon lose their existing insurance coverage for abortion.

3. Insurance coverage, including coverage for abortion, allows women to get the health care they need. A woman may seek an abortion for a wide variety of reasons, including: she is not ready to parent; she believes that having another child will take

away critical emotional and financial resources from the children she already has; she is the victim of domestic violence or rape; she aspires to finish her education or to get a better job that will help her family live a better life; her pregnancy has caused or exacerbated a serious health condition; her partner does not want a child; or the fetus she is carrying has a serious or fatal health condition.

4.      The Act violates Plaintiff's members' constitutional rights.  The Act's only purpose is to make it more difficult for women to obtain and pay for abortion care.  Indeed, it is akin to imposing an additional tax on the procedure.  Moreover, because the Act serves no legitimate state interest, it fails even rational basis review.  And, by prohibiting women from purchasing insurance that covers all of their health care needs while placing no similar restriction on men, it impermissibly discriminates based on sex.

## JURISDICTION AND VENUE

5.      This action is brought pursuant to 42 U.S.C. § 1983 for redress of violations of constitutional rights.  This Court accordingly has jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1343.

6.      Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general equitable powers of this Court.

7.      The Court has the authority to award costs and attorneys' fees under 42 U.S.C. § 1988.

8.      Venue in this district is proper under 28 U.S.C. § 1391(b).

## **PARTIES**

9.     Plaintiff American Civil Liberties Union of Kansas and Western Missouri is a statewide affiliate of the national American Civil Liberties Union.  The ACLU is a private, non-profit membership organization with more than 3,300 members in the State of Kansas and in Western Missouri.  Its membership includes Kansas women who have (or had) insurance plans that cover abortions but who will lose (or have already lost) that coverage because of the Act.  Its membership also includes women who will seek to purchase insurance polices on the exchange but will be prohibited from obtaining any coverage for abortion because of the Act.  The mission of the ACLU is to defend and advance, through litigation and advocacy, the individual freedoms embodied in the federal and Kansas and Missouri Constitutions, including the right to have an abortion.

10.     Sandy Praeger is the Insurance Commissioner for the State of Kansas. She has authority to enforce the challenged statute.  Defendant Praeger and her successors are sued in their official capacities.

## **FACTUAL ALLEGATIONS**

### The Challenged Act

11.     The Act was passed with the purpose of inhibiting women from accessing and paying for abortion care, and was passed along with a wave of similar abortion restrictions this legislative session.  Indeed, during the 2011 legislative session the legislature passed, and the Governor signed into law, a licensing statute designed to shut down the three abortion clinics in the state; a law prohibiting Planned Parenthood from receiving federal family planning money because of the organization's association with abortion; and a pre-viability ban on abortions after twenty weeks of pregnancy.

12. The Act added a new section to Kansas Statutes Annotated § 40-4124, and requires all health insurance policies – including all group and individual plans, health maintenance organization plans, etc. – to "exclude coverage for elective abortions, unless the procedure is necessary to save the life of the mother" if the policy is delivered within or outside of the state, or used within the state by an individual who resides or is employed in the state.  Act §§ 8(a), 9.

13. Similarly, "elective" abortion coverage must be excluded from health insurance policies offered on the health insurance exchange scheduled to take effect in 2014.  *Id*. at (b).

14. The Act defines "elective abortion" as pregnancy termination "for any reason other than to prevent the death" of the woman, "or to remove a dead fetus."  *Id*. at (c).  Thus, under the terms of the Act, abortions to prevent serious and permanent harm to a woman's health, abortions in the case of rape or incest, and abortions where the fetus has a serious or fatal health condition are all considered "elective" and cannot be covered.

15. For health insurance policies offered outside the state health insurance exchange, health insurance companies may offer "abortion coverage through an optional rider."  *Id*. at (a).

16. An optional rider must be paid for by an additional premium, which "shall be calculated so that it fully covers the estimated cost of covering elective abortions per enrollee as determined on an average actuarial basis."  *Id*.

17. The Act does not permit abortion riders for insurance policies sold on the state exchange.

4

18.     The Act applies to all policies "delivered, issued for delivery, amended, or renewed on or after July 1, 2011." *Id.*

19.     Any violation of the Act carries a penalty of a $500 fine, 6 months in jail, or both.  K.S.A. § 40-254.

### The Act's Effects

20.     Women need abortion care for many reasons.  For example, women chose abortion because they feel that they are too young or lack financial or personal resources to become a parent.  Or they may want to continue with their education or maintain a job to support their families, or they believe that having another child will take away critical emotional and financial resources from the children they already have.

21.     Women who are victims of domestic violence who become pregnant may chose abortion to avoid maintaining a connection to their abusive partner.

22.     Women who become pregnant as a result of rape or incest also may chose abortion.

23.     Women also need abortion for various health reasons.  For example, hypertension in pregnancy can lead to preeclampsia, which can cause significant damage to a woman's vision, kidneys, and liver.  Renal disease also exposes women to complications while pregnant.  And pregnancy can pose serious risks to the health of patients with cardiac problems.

24.     Women also may chose abortion if they discover that the fetus has a severe anomaly.  For example, some women choose to terminate their pregnancies after learning that the fetus has anencephaly, which is the failure of the brain to develop.  This condition is fatal, often prior to birth or, if not, shortly thereafter.

25. The Act also bars coverage for the treatment of miscarriages. In many instances, a woman who is the process of miscarrying needs care to complete the termination of the pregnancy. If the fetus is still alive, the Act bars coverage for this care even if the fetus has no chance of ultimate survival.

26. Upon information and belief, prior to the passage of the Act, a substantial percentage of Kansas women with health insurance had plans that covered abortions in circumstances such as those listed above. In fact, most women with employer-based insurance have abortion coverage.

27. The Act, however, will force women who formerly had insurance coverage for abortion to pay more for abortion care.

28. Some women will be forced to purchase a separate rider, with a separate premium cost, for care that was previously covered in their comprehensive policy.

29. Riders will not be available to all women, however.

30. For example, women who will buy their insurance coverage through the exchange will not have access to riders.

31. Moreover, some insurance companies in Kansas will not offer riders to some or all of their customers.

32. Other women who obtain their health insurance through their employers will not have access to riders because their employers will not offer them to their employees.

33. All of these women, as well as women who opt not to pay an additional premium for an abortion rider because they do not anticipate needing an abortion, will be

forced to pay out-of-pocket for a service that prior to the Act their comprehensive plans covered.

34. The cost for abortions in clinics is generally between $470 and $1500. Hospital-based abortions cost thousands of dollars.

35. As pregnancy advances, the cost of an abortion goes up. Women generally do not discover fetal anomalies or develop health conditions until later in pregnancy, meaning that abortion care for these women is at the more expensive end of the spectrum.

36. Upon information and belief, Kansas does not prohibit insurance companies from providing coverage – or require them to provide certain types of coverage in the form of a separate rider – for any other comparable health service, including any health care service needed by men.

### FIRST CAUSE OF ACTION

37. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

38. The challenged statute violates the Due Process Clause, including the right to privacy and liberty, in the Fourteenth Amendment of the U.S. Constitution.

### SECOND CAUSE OF ACTION

39. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

40. The challenged statute violates the guarantee of Equal Protection in the Fourteenth Amendment of the U.S. Constitution.

## **RELIEF REQUESTED**

WHEREFORE Plaintiff respectfully requests that this Court grant the following relief:

1. A declaration that the challenged statute is unconstitutional;

2. Preliminary and permanent injunctive relief prohibiting Defendant and her successors, agents, and anyone acting in concert with her from enforcing the challenged statute;

3. An award of costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

4. Such further and other relief as this Court deems appropriate.

## **PLACE OF TRIAL**

Pursuant to D. Kan. Rule 40.2, Plaintiff designates Kansas City as the place for trial.

Respectfully submitted,

    s/Stephen Douglas Bonney
Stephen Douglas Bonney, KS Bar No. 12322
ACLU Foundation of Kansas & Western Missouri
3601 Main Street
Kansas City, MO 64111
Tel. (816) 994-3311
Fax: (816) 756-0136
dbonney@aclukswmo.org

Brigitte Amiri*
Jennifer Dalven*
Andrew D. Beck*
ACLU Foundation
Reproductive Freedom Project
125 Broad Street, 18th Floor
New York, NY 10004
212-549-2633
bamiri@aclu.org
jdalven@aclu.org
abeck@aclu.org
*Admitted *Pro hac vice*

8

## **CERTIFICATE OF SERVICE**

   I hereby certify that on October 7, 2011, I caused a copy of Amended Complaint to be served through the Court's electronic filing system, which will serve all the parties in this action.

Dated: October 7, 2011      ___s/Stephen Douglas Bonney_____

9